UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PICACHO HILLS UTILITY COMPANY, INC.,  Case No. 13-10742-t7

    Debtor.

CLARK C. COLL, trustee,

    Plaintiff,

v.  Adv. 16-01006-t

STEPHEN BLANCO and
LAURI LUCERO,

    Defendants.

## **OPINION**

The chapter 7 trustee sued defendant Stephen Blanco, the Debtor's owner and President, to avoid alleged fraudulent transfers in the form of checks and cash withdrawals. Mr. Blanco's defense is that the payments were for salary, rent, and other legitimate business expenses. After a trial on the merits, the Court finds and concludes that $83,140.91 of the transfers may be avoided for the benefit of the estate.

    I.    FACTS[1]

---

[1] The Court takes judicial notice of its docket in the adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

The Court finds:[2]

Debtor, a New Mexico corporation, was a public utility as defined in section 3(G) of the New Mexico Public Utility Act, N.M.S.A. § 62-3-1 et seq. Debtor provided water and sewer service to approximately 1,000 houses in and around the Picacho Hills development near Las Cruces, New Mexico. Defendant is Debtor's sole shareholder. He is a director and the President.

Between 2009 until 2012, Debtor was named as a defendant in at least seven different lawsuits, most of which were collection actions. The cases were pending on the petition date.

On or about October 23, 2008, the New Mexico Public Regulation Commission ("PRC") commenced Case No. 08-00315-UT to investigate Debtor's compliance with PRC rules and orders. The final hearing, conducted over four days in February, 2010, included seven witnesses and 34 exhibits. Pre-hearing procedure, discovery, and preparation were comprehensive and took place over 15 months.

On May 26, 2010, the hearing examiner Carolyn R. Glick completed her Final Recommended Decision ("FRD"). The FRD is 88 pages long. The FRD is very critical of Debtor's

---

[2] Some of the facts are from previous trials in the main case. Given Defendant's participation in those trials, it is fair to use issue preclusion in this proceeding. Collateral estoppel applies in adversary proceedings, s*ee, e.g., Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991), and contested matters. *See e.g., In re Thomas*, 2007 WL 1655669, at *5 (Bankr. S.D.N.Y. 2007); *In re Flury*, 310 B.R. 659 (Bankr. M.D. Fla. 2004). The collateral estoppel effect of a federal judgment is a question of federal law. *In re Mosley,* 2013 WL 1137061, at *4 (Bankr. D.N.M.). *Matosantos Commercial Corp. v. Applebee's Intern. Inc.,* 245 F.3d 1203, 1207 (10th Cir. 2001). The Tenth Circuit requirements for collateral estoppel are "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Matosantos,* 245 F.3d at 1207, quoting *Dodge v. Cotter Corp.,* 203 F.3d 1190, 1198) (10th Cir. 2000), *cert. denied,* 531 U.S. 825 (2000). The Court finds that that Defendant was given a full and fair opportunity to litigate before the Court in the main bankruptcy case. Further, the Court finds that Defendant was in privity with the Debtor. The Court's findings can therefore fairly be the basis for issue preclusion.

and Defendant's actions. The FRD finds, for example, that Debtor violated PRC rules or orders 42 times and that Defendant gave false testimony, attempted to intimidate potential witnesses, and converted substantial Debtor funds.

On August 12, 2010, the PRC issued its Final Order in the Administrative Proceeding, adopting the hearing examiner's FRD with a few modifications. The PRC found and/or concluded that Debtor is unwilling or unable to adequately service its customers and consistently violated the PRC's rules or orders.[3] The PRC determined to commence an action in state court seeking the appointment of a receiver for Debtor's assets.[4]

On September 2, 2010, creditor Bank of the Rio Grande (the "Bank") filed an action in the Third Judicial District Court, Dona Ana County, New Mexico, styled *Bank of Rio Grande v. Picacho Hills Utility Company, Inc., et al.*, No. D-307-CV-201002416 (the "Receiver Action"). The state court appointed Robert Martin as receiver (the "Receiver") on November 14, 2011. Receiver sold debtor's assets for $2,150,100. Net proceeds from the sale totaled $726,191.41.

On March 7, 2013, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

---

[3] The PRC findings are binding upon this Court, under principles of collateral estoppel/issue preclusion. When applying principles of collateral estoppel based on state court judgments, the bankruptcy court looks to the applicable requirements of the state in which the judgment was entered. *See Gonzales v. Hernandez,* 175 F.3d 1202, 1204 (10th Cir. 1999) ("A federal court is required to give a state court judgment the same preclusive effect it would be given under the laws of the state in which it was rendered.") (citations omitted). Under New Mexico law, administrative adjudications can form the basis for collateral estoppel. *See Shovelin v. Cent. New Mexico Elec. Co-op, Inc.,* 115 N.M. 293, 298, 850 P.2d 996, 1001 (1993) ("administrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to 'fully and fairly litigate the issue at the administrative hearing'"). The Court finds that Debtor was given a full and fair opportunity to litigate before the Hearing Officer and the PRC, and that the PRC's final order can fairly be the basis for issue preclusion. This finding is bolstered by the fact that Debtor appealed the final order to the New Mexico Supreme Court, which affirmed the PRC's decision in all respects.

[4] For the PRC's authority to do so, *see* N.M.S.A. § 63-13-15.

At the time of filing, Debtor's schedules showed assets of $726,850.21 and liabilities of $1,369,688.61. Debtor was insolvent at the time of the filing of the bankruptcy petition. Defendant signed the bankruptcy schedules as Debtor's president.

Debtor rented space from Defendant's house at a rate of $400 per month. Defendant's salary was $40,000 per year.[5] The Court finds that these amounts are reasonable. Both were approved by the PRC.

Debtor's business practices and accounting procedures were relaxed.[6] Defendant withdrew cash from Debtor whenever he needed it. Debtor's accountant would book the withdrawals as rent payments, payroll, reimbursable expenses, or employee advances.

After May 14, 2010, Defendant caused the following payments and withdrawals to be made from the Debtor's checking account:

| Month | Checks to Defendant | Cash Withdrawals | Total | Ending checking account balance |
|---|---|---|---|---|
| May 14-30 2010 | $2,829.10 | $1,000 | $3,829.10 | $ 5,795.46 |
| June 2010 | $2,227.59 | | $2,227.59 | $20,423.32 |
| July 2010 | | $8,250 | $8,250 | $17,865.19 |
| August 2010 | | $11,100 | $11,100 | $ 8,870.84 |
| September 2010 | | $23,150 | $23,150 | $ 4,277.07 |
| October 2010 | $3,229.85 | $5,400 | $8,729.85 | $15,387.81 |
| November 2010 | | $11,450 | $11,450 | $13,224.98 |
| December 2010 | | $19,620 | $19,620 | $18,247.09 |
| January 2011 | | $18,200 | $18,200 | $ 2,659.84 |
| February 2011 | | $13,700 | $13,700 | $      93.07 |
| March 2011 | | $7,650 | $7,650 | $13,714.81 |
| April 2011 | | $10,110 | $10,110 | $ 7,638.77 |

---

[5] The evidence on this point is weak, but the Court has enough to make a finding.
[6] For example, the PRC found that Debtor paid Defendant's personal credit cards but failed to show that the payments were for business expenses. FRD at 45, 47. The PRC also was very critical of how the Debtor accounted for funds received under various "line extension agreements," FRD at 60-62, 77, and loan proceeds, FRD at 30. At one point the PRC concluded that "significant money is missing." FRD at 37. Because of Debtor's lack of capital and shoddy accounting practices, the PRC recommended the appointment of a receiver. FRD at 38, 83.

| | | | | |
|---|---|---|---|---|
| May 2011 | $4,450.29 | $11,300 | $11,300 | $44,533.65 |
| June 2011 | $4,122.54 | $1,500 | $1,500 | $34,076.18 |
| July 2011 | | $1,800 | $1,800 | $42,333.91 |
| August 2011 | | | $0 | $62,984.80 |
| September 2011 | | | $0 | $18,603.82 |
| October 2011 | $5,495.54 | $800 | $6,295.54 | $27,611.24 |
| Total: | $22,354.91 | $127,980 | $150,334.91 | |

In addition to these checks and cash withdrawals, Defendant caused the Debtor to issue two checks to the Defendant's girlfriend Lauri Lucero on May 18, 2011 ($20,000) and August 19, 2011 ($4,000).[7]

In December 2010, Defendant made 24 separate cash withdrawals totaling $19,620, while honoring only 15 checks totaling $14,402.95.

During the 18-month period when the challenged transfers were made, Defendant earned $59,994 in salary ($3,333 a month x 18 months) and $7,200 in rent ($400 a month x 18 months), for a total of $67,194.

When the state-court appointed receiver took over, Debtor had about $1,000 in the bank.

On August 31, 2012, unbeknownst to the Receiver, Defendant caused Debtor to purport to convey 1,876 acre feet of Debtor's permitted water rights to an entity denoted Rio Grande Investments, LLC. On September 19, 2012, Defendant caused Rio Grande Investments, LLC to purport to convey the same water rights to Resurrection Mining, LLC.

Debtor had been undercapitalized for years. *See* FRD at 38, 53, 68, 71, 76, 81, and 83.

II.     DISCUSSION

A.     Count I. Actual Fraud under N.M.S.A. § 56-10-18(A).

---

[7] Plaintiff alleged that Ms. Lucero was Defendant's girlfriend. Defendant did not deny the allegation, so the Court deems the allegation admitted. *See* Fed. R. Bankr. P. 7008 and Fed. R. Civ. Pro. 8((b)(6).

Section 544(b)(1)[8] gives a trustee the ability to avoid transfers of a debtor's property that "would be voidable by an unsecured creditor pursuant to applicable state law." *In re Expert South Tulsa, LLC*, 534 B.R. 400, 408 (10th Cir. BAP 2015), *aff'd*, 842 F.3d 1293 (10th Cir. 2016). This provision makes state fraudulent transfer laws applicable in bankruptcy. *Id.* N.M.S.A. § 56-10-18(A) provides:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>   (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>   (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>     (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>     (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The state statute has a four-year "lookback" period, *see* N.M.S.A. § 56-10-23(A). The period is calculated from the date the order from relief was entered. § 108(a). Thus, under Count I, transfers after March 7, 2009 are subject to potential avoidance. The challenged transfers were between May 14, 2010 and November 14, 2011, well within the lookback period.

N.M.S.A. § 56-10-18(B) lists "eleven factors or badges of fraud that a district court may consider when determining whether a party had actual intent under Section 56-10-18(A)(1)." *Cardrew, LLC v. Jones*, 2010 WL 4060339, at *2 (N.M. App.).[9] The eleven factors are:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;

---

[8] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[9] *See also Ellen Equip. Corp. v. C.V. Consultants & Assocs., Inc.*, 144 N.M. 55, 57 (Ct. App. 2008) ("To determine whether there was actual intent, courts may consider a number of factors, often called 'badges of fraud'").

(4) before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.M.S.A. § 56-10-18(B). The Court "is not required to consider these factors" and "they are not exclusive." *Ellen Equip. Corp.*, 144 N.M. at 58. However, a creditor "may establish a prima facie case through proof of badges of fraud." *Id* at 58, quoting *First Nat'l Bank in Albuquerque v. Abraham,* 97 N.M. 288, 292 (1982). The Court weighs the eleven badges as follows:

| Badge | Discussion |
| --- | --- |
| 1. Transfer to an insider. | Defendant clearly was an insider. *See* N.M.S.A. § 56-10-15(G). Favors plaintiff. |
| 2. Debtor retained possession or control of the property after the transfer. | Debtor did not retain possession or control of the money after Defendant withdrew it. Favors defendant. |
| 3. The transfer or obligation was disclosed or concealed. | There is no evidence that Defendant concealed the transfers. Favors defendant. |
| 4. Before the transfer was made Debtor has been sued or threatened with suit. | Defendant was a named defendant in at least seven lawsuits during the period in which the transfers occurred. Favors plaintiff. |
| 5. The transfer was of substantially all the debtor's assets. | Defendant only took Debtor's cash, not its tangible utility assets. Favors defendant. |
| 6. The debtor absconded. | The Debtor, a corporation, did not abscond. Favors defendant. |
| 7. The debtor removed or concealed assets. | In addition to the challenged transfers, Debtor transferred valuable water rights on or about August 31, 2012. Favors plaintiff. |
| 8. Reasonably equivalent exchange value received. | Defendant should only have been paid his PRC-approved salary and rent. There was no reasonably equivalent value for the excess. Favors plaintiff. |

| | |
|---|---|
| 9. The debtor was insolvent or became insolvent shortly after the transfer was made. | Debtor was insolvent at the time the transfers were made. Favors plaintiff. |
| 10. The transfer occurred shortly before or shortly after a substantial debt was incurred. | The transfers occurred when the Debtor was fighting a losing, costly battle with the PRC, and also when the state court receiver action was pending. Favors plaintiff. |
| 11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. | Not applicable. |

These badges are not exclusive. In addition, the Court finds that the repeated, large cash withdrawals were highly unusual and suspect. For almost a year (from June 11, 2010 until May 25, 2011), Defendant received a single paycheck from the Debtor, while making 142 cash withdrawals totaling $122,130. Businesses like the Debtor should pay salary, rent, and other expenses with reasonable accounting controls, e.g., by check or electronic funds transfer. Each payment should be adequately accounted for. Cash payments should be the rare exception, not the normal course of business. Further, any required cash disbursements should be accounted for the same way as checks or electronic transfers, i.e., by noting the date, payee, and expense paid. Debtor/Defendant violated these rules. There is no excuse for a business under such heavy regulatory scrutiny to operate without accounting controls.

In addition, it is highly improper to pay salary in cash, bypassing required deductions for Social Security, Medicare, unemployment insurance, and federal and state income taxes. Defendant received only 7 paychecks over the 18 months in question, totaling $22,354.91 (about 37% of his earned salary). The balance purportedly was paid in cash, with no withholding. Such improper and lackadaisical wage payments are a significant badge of fraud.

Finally, the large payments to Defendant's girlfriend shortly before the Receiver took over are unusual and suspect.

Weighing all of the evidence, the Court concludes that the payments Defendant caused Debtor to make to himself were made with actual fraudulent intent, to the extent they exceeded the amounts owed for his salary and rent. The net avoidable amount is $83,140.91 ($150,334.91 - $67,194).

B.  Count II. Constructive Fraud under N.M.S.A. § 56-10-18(A)(2).

Under N.M.S.A. § 56-10-18(A)(2), a transfer by a debtor is fraudulent if made without receiving reasonably equivalent value in exchange and (a) after the transfer, the debtor's remaining assets are unreasonably small in relation to its business, or (b) the debtor intended or reasonably should have believed it would incur debts beyond its ability to pay as they came due.

1.  Reasonably equivalent value. As shown above, the Debtor received reasonably equivalent value for the transfers to the extent of $67,194. However, reasonably equivalent value was not provided for the remaining $83,140.91 transferred to Defendant.

2.  Unreasonably small remaining assets. The evidence shows that the Debtor was significantly undercapitalized at all relevant times, including after every challenged transfer. Debtor's bank account balances usually were quite low in relation to its debts and ongoing business expenses. For example, the ending balance of Debtor's bank account on February 28, 2011, was $93.07, and on September 30, 2010, was $4,277.07. When the receiver took over Debtor's operations, there was $1,000 in the account. Debtor could not afford to construct the sewage discharge pipeline that had been ordered by the PRC in 2007. Given the persistent lack of capital, the Court finds that the transfers resulted in an unreasonably small asset base for Debtor's ongoing business operations.

3. <u>Incur debts beyond ability to pay</u>. Debtor owed a great deal to its creditors at the time of the transfers and lacked the capital to pay the debts as they came due.[10] The Court finds that when the transfers were made the Debtor intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they matured.

The trustee carried his burden of proving constructive fraud under N.M.S.A. § 56-10-18(A)(2) to the extent of $83,140.91.

C. <u>Count III. Avoidance of Fraudulent Transfers as Actual Fraud under 11 U.S.C. § 548(a)(1)(A)</u>.

11 U.S.C. § 548 provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;

Under § 548(a), the "look-back period" is two years before the petition date, i.e., March 7, 2013. As shown above, Debtor transferred $47,228.37 to Defendant between March 7, 2011 and October 31, 2011. During that time, Debtor owed Defendant $26,666.67 in salary and $3,200 in rent, for a total of $29,866.67. The excess, $17,361.70, is avoidable, for the reasons stated above.

D. <u>Count IV. Avoidance of Fraudulent Transfers as Constructive Fraud under 11 U.S.C. § 548(a)(1)(B)</u>.

11 U.S.C. § 548(a)(1)(B) provides:

---

[10] For example, Debtor's balance sheet as of December 31, 2012 showed current assets of $112,184 and current liabilities of $836,947. The same balance sheet showed that total liabilities exceeded total assets by $46,125.59.

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

….

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

As discussed above, Debtor was insolvent in 2011, and only received equivalent value for the transfers to the extent of $29,866.67. The difference of $17,361.70 is avoidable under § 548(a)(1)(B).

### III. CONCLUSION

Under state law, Plaintiff can avoid $83,140.91 in transfers to Defendant. A much smaller amount is avoidable under § 548. A separate judgment for the larger amount will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Court

Entered: July 19, 2019
Copies to: electronic notice recipients

Stephen C. Blanco
P.O. Box 250
Fairacres, NM 88033

-11-
Case 16-01006-t    Doc 114    Filed 07/19/19    Entered 07/19/19 15:31:25 Page 11 of 11